ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL VI

| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDO<br><br>V.<br><br>CHRISTOPHER VÁZQUEZ<br><br>PETICIONARIO | TA2025CE00048 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Número:<br>ISCR201001238-1239<br><br>Sobre:<br>ART. 106 C.P. y<br>ART. 5.05 L.A. |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 12 de septiembre de 2025.

Comparece el señor Christopher Vázquez (Sr. Vázquez; peticionario) de *forma pauperis* y por derecho propio ante este Tribunal de Apelaciones y nos presenta un manuscrito titulado *Apelación*, el cual atendemos como un recurso de *certiorari*. El Sr. Vázquez nos solicita que revoquemos la *Resolución* emitida el 13 de mayo de 2025 y notificada el 27 de mayo de 2025 por la Sala de Mayagüez del Tribunal de Primera Instancia (TPI), en la cual se declaró No Ha Lugar a la solicitud del peticionario a los fines de que se eliminen los agravantes de la sentencia que cumple y se modifique su pena.

Adelantamos que se deniega la expedición del auto de *certiorari* sin trámite ulterior bajo lo dispuesto en la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 7 (B) (5).[1]

---

[1] La Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, nos permite "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante [nuestra] consideración, con el propósito de lograr su más justo y eficiente despacho".

**I**

A raíz de hechos ocurridos el 2 de junio de 2010, el Sr. Vázquez fue acusado de asesinato en segundo grado y una infracción al Artículo 5.05 de la derogada Ley de Armas, 25 LPRA sec. 458d. Luego de celebrado el juicio por jurado, el peticionario fue hallado culpable de ambos cargos y sentenciado el 23 de febrero de 2011 a cumplir 20 años de cárcel por el delito de asesinato en segundo grado y 10 años de cárcel por la infracción a la Ley de Armas para un total de 30 años de cárcel.[2] La mencionada sentencia advino final y firme. No obstante, el Sr. Vázquez acude ante nosotros mediante el recurso de epígrafe y reclama que su convicción fue declarada en contrario a la norma jurídica actual, pues fue hallado culpable por un jurado con veredictos no unánimes de 11/1 y 10/2 en ambos cargos. Por tal motivo, relata que el 3 de febrero de 2025 presentó una moción de *Reconsideración* bajo la Regla 185 de Procedimiento Criminal ante el TPI.[3] En la aludida moción, el peticionario planteó que el foro primario debió corregir su sentencia porque la pena adjudicada rebasa los límites dispuestos en el estatuto penal e invocó el hecho de que él fue declarado culpable tras un fallo no unánime contrario a la norma actual que exige un veredicto unánime.[4] Además, argumentó que los agravantes que aumentaron su pena son improcedentes por motivo de que no fueron considerados por el jurado. Expuesto lo anterior, el Sr. Vázquez solicitó en su escrito de *Reconsideración* lo siguiente:

A) Una vista con el fin de dar todas las salvaguardas del debido proceso de ley.
B) Notificar a las partes.
C) Re sentenciar la pena fija establecida en el art. 5.05 L.A. de tres (3) Años.
D) Revocar el artículo 7.03 de la derogada ley 404-2000.
E) Reconsiderar la pena de asesinato en segundo grado un -.25% considerando los atenuantes.
F) Declare Ha-Lugar la presente solicitud con todo pronunciamiento nunc pro tunc.[5]

Recibida la moción, el TPI le concedió quince (15) días al Ministerio Público el 15 de febrero de 2025, para que expusiera su posición.[6] Sin embargo,

---

[2] Apéndice del recuso, Anejo 7.
[3] Apéndice del recurso, Anejo 1.
[4] Apéndice del recurso, Anejo 1, págs. 3-4.
[5] *Id.*, pág. 5.
[6] Apéndice del recurso, Anejo 2.

el Ministerio Público cumplió con lo ordenado el 6 de mayo de 2025.  En su *Escrito Informativo y en Cumplimiento de Orden,* el Pueblo expuso que el fallo condenatorio y su pena fueron emitidas conforme a derecho y argumentó que la responsabilidad de demostrar la ocurrencia de circunstancias atenuantes recae sobre el acusado y expuso que el peticionario no presentó prueba al respecto e incluso alegó lo mencionado en destiempo.[7]  De igual manera planteó que el Artículo 7.03 de la derogada Ley de Armas, *supra*, era de aplicación en el caso, puesto que se utilizó un arma blanca para causarle la muerte a un ser humano.[8]

El TPI emitió *Resolución* el13 de mayo de 2025, notificada el 27 de mayo de 2025, donde declaró No Ha Lugar la solicitud del Sr. Vázquez sobre la sentencia emitida.[9]  Inconforme con el resultado, el Sr. Vázquez presentó el recurso ante nuestra consideración, en el cual expone los siguientes señalamientos de errores:

> **Primer Error:** El acusado tiene un derecho a que los agravantes que aumentan la pena sean alegados en la acusación.
>
> **Segundo Error:** La determinación de agravantes que aumentan la pena debe ir al jurado, salvo la determinación de reincidencia.
>
> **Tercer Error:** La imposición de la pena no fue probada más allá de duda razonable.
>
> **Cuarto Error:** La posición del [M]inisterio [P]úblico fue una flaca y vacía bajo el estado de derecho que incumpliendo con el ordenamiento jurídico que incluso fuera del término dado por el Tribunal.

## II

## A

El recurso de *certiorari* está regulado por la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.  Aunque se trata de un recurso discrecional, la Regla 40, esboza los siete criterios que el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari* como sigue:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[7] Apéndice del recurso, Anejo 7.
[8] *Id.*, pág. 3.
[9] Apéndice del recurso, Anejo *Res. Recurrida*.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPR. Ap. XXII-B, R. 40.

Por tanto, la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros", sino que el tribunal revisor debe ceñirse a los criterios antes transcritos.

**B**

La Regla 185 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 185, establece lo siguiente:

Corrección de la Sentencia

(a) Sentencia ilegal, redacción de la sentencia. El tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Asimismo, podrá por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta días después de haberse recibido el mandato confirmando la sentencia o desestimando la apelación o de haberse recibido una orden denegando una solicitud de certiorari.

(b) Errores de forma. Errores de forma en las sentencias, órdenes u otros documentos de los autos, y errores en el expediente que surjan por inadvertencia u omisión podrán corregirse por el tribunal en cualquier momento, y luego de notificarse a las partes, si el tribunal estimare necesaria dicha notificación. (Énfasis nuestro.)

Esta Regla "autoriza a un tribunal 'por causa justificada y en bien de la justicia' a rebajar una sentencia **dentro de los noventa días de haber sido dictada**". (Énfasis nuestro.) *Pueblo v. Cubero Colón*, 116 DPR 682, 684 (1985), seguido en *Pueblo v. Pueblo v. Mojica Cruz*, 115 DPR 569 (1984). Además, "es el mecanismo adecuado para corregir y/o modificar la pena impuesta a una persona cuando: los términos de la sentencia rebasan los límites fijados por el estatuto penal y/o se ha impuesto un castigo distinto al que había sido

establecido". (Énfasis nuestro.) *Pueblo v. Martínez Lugo,* 150 DPR 238, 245 (2000). Sin embargo, bajo la Regla 185 "no es posible variar o dejar sin efecto los fallos condenatorios". *Pueblo v. Martínez Lugo*, 150 DPR 238, 245 (2000), que cita a *Pueblo v. Valdés Sanchez*, 140 DPR 490 (1996).

Por otro lado, la Regla 192.1 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, permite que una persona detenida en virtud de una sentencia dictada por el Tribunal de Primera Instancia invoque el derecho a ser puesta en libertad por lo siguiente:

> (1) la sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; o
>
> (2) el tribunal no tenía jurisdicción para imponer dicha sentencia; o
>
> (3) la sentencia impuesta excede de la pena prescrita por la ley; o
>
> (4) la sentencia está sujeta a ataque colateral por cualquier motivo, podrá presentar una moción a la sala del tribunal que impuso la sentencia para que anule, deje sin efecto o corrija la sentencia.

Una moción bajo la Regla 192.1, debe incluir "todos los fundamentos que tenga el peticionario para solicitar el remedio provisto en ella, por lo que se considerarán renunciados los fundamentos no incluidos en la moción, a menos que el tribunal, con base en un escrito subsiguiente, determine razonable que tales fundamentos no pudieron presentarse en la moción original". *Pueblo v. Pérez Adorno*, 178 DPR 946, 965 (2010). Además, "la cuestión que ha de plantearse es **si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo**". (Énfasis nuestro.) 178 DPR, págs. 965-966.

Es decir, solo procede una moción bajo la Regla 192.1 "cuando la **sentencia adolece de un defecto fundamental que conlleva inevitablemente una violación al debido proceso de ley**". (Énfasis nuestro.) 178 DPR, pág. 966. La norma es que "salvo circunstancias excepcionales, no se concederá en sustitución del recurso ordinario de apelación". 178 DPR, pág. 966, que cita a: *Otero Fernández v. Alguacil*, 116 DPR 733 (1985); D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Ed. U.I.A., 1996, págs. 181–184. No

obstante, la norma reiterada es que los foros apelativos no debemos intervenir "con el ejercicio de la discreción del tribunal de instancia en la imposición de la pena, salvo en los casos de claro abuso de discreción." *Pueblo v. Rodríguez Santana*, 146 DPR 860, 888-889 (1998).

**C**

La Constitución del Estado Libre Asociado de Puerto Rico, en la Sección 11 del Artículo II, establece los derechos fundamentales que le asisten a toda persona acusada por la comisión de delito. Uno de los derechos allí reconocidos es el derecho a gozar de la presunción de inocencia. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2016, págs. 354-355. La Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R.110, viabiliza el citado mandato constitucional al disponer lo siguiente:

> En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Si la duda es entre grados de un delito o entre delitos de distinta gravedad sólo podrá condenársele del grado inferior o delito de menor gravedad.

La denominada *presunción de inocencia* se traduce en que todo acusado es inocente hasta que el Estado pruebe que es culpable, más allá de duda razonable, mediante la presentación de prueba suficiente y satisfactoria sobre cada uno los elementos del delito imputado y su conexión con el acusado. El Tribunal Supremo de Puerto Rico ha caracterizado la presunción de inocencia como el pilar del sistema penal puertorriqueño del cual surgen otros derechos corolarios. *Pueblo v. Pagán Medina*, 175 DPR 557, 567 (2009). **La garantía constitucional a la presunción de inocencia acompaña al imputado de delito desde el inicio de la acción penal hasta que se emita un fallo o veredicto de culpabilidad conforme a Derecho**. Ernesto Chiesa Aponte*, Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. II, Forum, 1995, pág. 66.

De otro lado, la Constitución de Puerto Rico establece también que, en los casos criminales graves, "el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de

nueve".   Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 354.[10]

Nuestro Tribunal Supremo ha reiterado la validez de esta norma,[11] toda vez que

el Tribunal Supremo Federal nunca había resuelto que un jurado unánime fuera

un requisito inherente al debido proceso de ley.  *Pueblo v. Casellas Toro*, 197

DPR 1003, 1016 (2017), que cita a *Johnson v. Louisiana*, 406 US 356, 359

(1972).   No obstante, tan reciente como el pasado 20 de abril de 2020, el

Tribunal Supremo Federal revocó el *stare decisis* imperante en las decisiones

adoptadas en *Johnson v. Louisiana*, 406 US 356 (1972) y *Apodaca v. Oregon*,

406 US 404 (1972), que avalaban las convicciones por veredictos no unánimes

en dichos estados.  **En *Ramos v. Louisiana*, 590 US 83 (2020), el Tribunal**

**Supremo de Estados Unidos concluyó que, como derecho fundamental, la**

**Sexta Enmienda de la Constitución de los Estados Unidos requiere**

**indubitadamente que la convicción del acusado por un delito grave se tiene**

**que validar mediante un veredicto unánime**.  En una Opinión fraccionada,

una mayoría del Máximo Foro Federal enunció lo siguiente:

> The Sixth Amendment promises that "**[i]n all criminal**
> **prosecutions, the accused shall enjoy the right to a speedy**
> **and public trial, by an impartial jury** of the State and district
> wherein the crime shall have been committed, which district shall
> have been previously ascertained by law." The Amendment goes
> on to preserve other rights for criminal defendants but says nothing
> else about what a "trial by an impartial jury" entails.
>
> Still, the promise of a jury trial surely meant something— otherwise,
> there would have been no reason to write it down. Nor would it have
> made any sense to spell out the places from which jurors should
> be drawn if their powers as jurors could be freely abridged by
> statute.  Imagine a constitution that allowed a "jury trial" to mean
> nothing but a single person rubberstamping conviction without
> hearing any evidence—but simultaneously insisting that the lone
> juror come from a specific judicial district "previously ascertained
> by law." And if that's not enough, imagine a constitution that
> included the same hollow guarantee twice—not only in the Sixth
> Amendment, but also in Article III.  No: **The text and structure of**
> **the Constitution clearly suggest that the term "trial by an**
> **impartial jury" carried with it some meaning about the content**
> **and requirements of a jury trial.**
>
> **One of these requirements was unanimity.  Wherever we might**
> **look to determine what the term "trial by an impartial jury trial"**

---

[10] Véase, además, la Regla 112 de Procedimiento Criminal, 34 LPRA Ap. II, R. 112.

[11] Véanse, *Pueblo v. Casellas Toro*, 197 DPR 1003 (2017); *Pueblo v. Collazo Hiraldo*, 105 DPR 726 (1977); *Pueblo v. Dingui Ayala*, 103 DPR 528 (1975); *Pueblo v. Sánchez Torres*, 102 DPR 499 (1974); *Pueblo v. París Medina*, 101 DPR 253 (1973); *Pueblo v. Santiago Padilla*, 100 DPR 782 (1972); *Pueblo v. Hernández Soto*, 99 DPR 768 (1971); *Pueblo v. Maldonado Dipiní*, 96 DPR 897 (1969); *Pueblo v. Aponte González*, 83 DPR 511 (1961); *Fournier v. González*, 80 DPR 262 (1958).

**meant at the time of the Sixth Amendment's adoption— whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict**. (Énfasis nuestro.) *Ramos v. Louisiana*, 590 U.S. 83, 90 (2020).

Asimismo, la Opinión sostuvo que, por la naturaleza fundamental del derecho del veredicto por unanimidad, como parte integral del derecho a juicio público por un jurado imparcial en procesamientos de delitos graves, el derecho es incorporable a los estados de la Unión por virtud de la Decimocuarta Enmienda de la Constitución Federal, que dispone, en lo pertinente, en la Primera Sección: "(…) Ningún estado aprobará o hará cumplir ninguna ley que restrinja los privilegios o inmunidades de los ciudadanos de los Estados Unidos; **ni ningún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes**". (Énfasis nuestro.) Const. EE.UU. Enm. XIV, LPRA Tomo 1, ed. 2016, págs. 207-208.

> **This Court has long explained that the Sixth Amendment right to a jury trial is "fundamental to the American scheme of justice" and incorporated against the States under the Fourteenth Amendment**. This Court has long explained, too, that incorporated provisions of the Bill of Rights bear the same content when asserted against States as they do when asserted against the federal government. **So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court**. (Énfasis nuestro.) *Ramos v. Louisiana*, 590 U.S. 83, 93 (2020).

Esta decisión viene a consolidar la determinación adoptada en *Duncan v. Louisiana*, 391 US 145 (1968), que, en aquel momento, bajo la doctrina de incorporación selectiva de la Decimocuarta Enmienda, incorporó a los estados el derecho fundamental a juicio por jurado en los casos criminales graves, según consignado en la Sexta Enmienda. Por consiguiente, los estados no sólo están obligados a celebrar juicios públicos e imparciales en los casos criminales graves, sino que, a partir de *Ramos v. Louisiana*, para privar de su libertad a un ciudadano, los veredictos de culpabilidad conforme a Derecho tienen que ser unánimes.

Con respecto a Puerto Rico, como territorio no incorporado de los Estados Unidos, sujeto a los poderes plenarios del Congreso por virtud de la

Cláusula Territorial de la Constitución Federal,[12] el Tribunal Supremo Federal ha reconocido la extensión a nuestra jurisdicción de los derechos fundamentales, que la Quinta Enmienda[13] o la Decimocuarta Enmienda ha otorgado a los ciudadanos de los estados. Véase, *Boumediene v. Bush,* 553 US 723 (2008); *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 US 328 (1986); *Torres v. Puerto Rico*, 442 US 465 (1979); *Examining Bd. v. Flores de Otero*, 426 US 572 (1976); *Duncan v. Louisiana*, 391 US 145 (1968); *Balzac v. Porto Rico*, 258 US 298 (1922); *Downes v. Bidwell*, 182 US 244 (1901); además, *Obergefell v. Hodges*, 576 US 644 (2015); *Crawford v. Washington,* 541 US 36 (2004); *Lawrence v. Texas*, 539 US 558 (2003); *Roe v. Wade*, 410 US 113 (1973). Siendo así, por decisión del Tribunal Supremo Federal, al decretarse la naturaleza fundamental de las garantías constitucionales, éstas aplican, *ex proprio vigore*, a los ciudadanos estadounidenses residentes en el territorio de Puerto Rico. Lo anterior ha sido consistentemente reconocido por el Tribunal Supremo de Puerto Rico. Véanse, *Pueblo v. Casellas Toro,* 197 DPR 1003 (2017); *Pueblo v. Sánchez Valle,* 192 DPR 595 (2015); *ELA v. Northwestern Select,* 185 DPR 40 (2012); *Pueblo v. Santana Vélez,* 177 DPR 61 (2009); *Pueblo v. Duarte Mendoza,* 109 DPR 596 (1980).

**Según lo resuelto en *Ramos v. Louisiana, supra*, de conformidad con la Sexta Enmienda de la Constitución de Estados Unidos, para que se pueda derrotar la presunción de inocencia del acusado de delito grave, el veredicto de culpabilidad tiene que ser unánime. Por tratarse de un derecho fundamental, esta garantía es extensible a Puerto Rico.** En relación

---

[12] Véanse, *Harris v. Rosario*, 446 US 651 (1980)*; Pueblo v. Sánchez Valle et al.*, 192 DPR 594 (2015).

La disposición constitucional establece: "El Congreso podrá disponer de, o promulgar todas las reglas y reglamentos necesarios en relación con, el territorio o cualquier propiedad perteneciente a los Estados Unidos. Ninguna disposición de esta Constitución se interpretará en forma tal que pudiere perjudicar cualesquiera reclamaciones de los Estados Unidos o de algún estado en particular". Const. EE.UU. Art. IV, Sec. 3, LPRA Tomo 1, ed. 2016, pág. 177.

[13] La disposición constitucional reza: "Ninguna persona será obligada a responder por delito capital o infamante, sino en virtud de denuncia o acusación por un gran jurado, salvo en los casos que ocurran en las fuerzas de mar y tierra, o en la milicia, cuando se hallen en servicio activo en tiempos de guerra o de peligro público; ni podrá nadie ser sometido por el mismo delito dos veces a un juicio que pueda ocasionarle la pérdida de la vida o la integridad corporal; ni será compelido en ningún caso criminal a declarar contra sí mismo, ni será privado de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley; ni se podrá tomar propiedad privada para uso público, sin justa compensación". Const. EE.UU. Enm. V, LPRA Tomo 1, ed. 2016, págs. 190-191.

con su aplicación, más allá de los casos nuevos y los que todavía no han sido adjudicados, a los que la norma evidentemente procede prospectivamente, la mayoría de la Curia Federal aludió a la aplicación de la norma jurídica a aquellos casos que, habiéndose adjudicado, no ostentan finalidad ni firmeza por encontrarse en medio de procesos apelativos. (**"The first concerns the fact Louisiana and Oregon may need to retry defendants convicted of felonies by nonunanimous verdicts whose cases are still pending on direct appeal."** (Énfasis nuestro.) *Ramos v. Louisiana*, 590 U.S. 83, (2020)).[14]

## III

El Sr. Vázquez recurre ante este foro luego de que su petición de modificación de sentencia haya sido declarada No Ha Lugar por el TPI. En su recurso expone que el Tribunal de Primera Instancia se equivocó al imponerle agravantes que no fueron alegados en su acusación y que no fueron presentados al jurado. Además, discute que la imposición de la pena no fue probada más allá de duda razonable y alega que la posición del Ministerio Público ante su solicitud fue una flaca, vacía y en incumplimiento con el ordenamiento jurídico. Evaluado el presente recurso, determinamos que no nos encontramos bajo alguna de las instancias en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, que nos permita intervenir con el dictamen recurrido. Como discutimos en la exposición del derecho aplicable, el peticionario solicita la modificación de un fallo condenatorio correcto en derecho puesto que la norma de unanimidad en juicios por jurados para delitos graves no es de aplicación retroactiva con excepción de las sentencias que no han advenido finales y firmes. Reiteramos que su sentencia es una que advino final y firme hacen años. Por tanto, tampoco cabe hablar de corrección de sentencia al amparo de la Regla 185 de Procedimiento Criminal. Ante la ausencia de perjuicio, pasión, parcialidad y error de derecho no procede la expedición del

---

[14] Empero, la Opinión indica que "the right to jury unanimity applies to cases on collateral review is a question for a future case where the parties will have a chance to brief the issue and we will benefit from their adversarial presentation. That litigation is sure to come and will rightly take into account the States' interest in the finality of their criminal convictions". *Ramos v Louisiana*, 2020 WL 1906545, pág. 14.

recurso de *certiorari*. En consecuencia, determinamos que no se amerita nuestra intervención en esta etapa de los procedimientos.

**IV**

Por lo antes expuesto, se deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La juez Aldebol Mora concurre sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones